1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT

6               FOR THE EASTERN DISTRICT OF CALIFORNIA

7
   ANA ORELLANA,                          Case No. 1:06-cv-1166 OWW TAG
8
                    Plaintiff,            FINDINGS  AND RECOMMENDATIONS
9                                         ON APPEAL FROM A FINAL
          vs.                             ADMINISTRATIVE DECISION
10
   MICHAEL J. ASTRUE,[1]
11 Commissioner of Social Security,

12                Defendant.
   _____/
13
          Plaintiff Ana Orellana ("Claimant") seeks judicial review of an administrative decision

14 denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security

15 Act (the "Act"), 42 U.S.C. § 1381 et seq.  (Doc. 2).  Pending before the Court is Claimant's appeal

16 from the administrative decision of the Commissioner of Social Security ("Commissioner").

17 Claimant filed her complaint on August 26, 2006 (Doc. 1), and her opening brief on May 13, 2007.

18 (Doc. 18).  The Commissioner filed his opposing brief on June 12, 2007.  (Doc. 22).  Claimant did

19 not file a reply brief.

20                    PROCEDURAL HISTORY/JURISDICTION

21        On August 28, 2000, Claimant filed an application for SSI alleging an onset date of July 28,

22 2000.[2]  (AR 267-269).  Her application was denied initially and on reconsideration.  (AR 255-258,

23 261-264).  After timely requesting a hearing, Claimant and her counsel appeared before

24 _____

25        [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
   Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).
26
        [2]  Claimant previously filed an application for SSI in March 1999, which the Administrative Law Judge ("ALJ")
27 denied in a July 27, 2000 written decision after holding a hearing in June 2000.  (See AR 58-66, 227-35).  In his
   decision, the ALJ reported that Claimant alleged disability based on body pain and asthma.  (AR 61, 230).  The Appeals
28 Council denied Claimant's request for review on May 12, 2001.  (AR 51-52).

                                               1

1   Administrative Law Judge ("ALJ") Joseph Gontrum on November 20, 2002.  (AR 265, 689-6706).

2   ALJ Gontrum determined that he needed to further develop the record and set a supplemental

3   hearing before he could render a decision, but he was transferred before he could schedule the

4   supplemental hearing. (AR 710).  The supplemental hearing, therefore, was set and proceeded before

5   ALJ Rocklin Lyon on September 25, 2003, with Claimant and her attorney present.  (AR 707-718).

6   On December 23, 2003, ALJ Lyon issued a written decision finding that Claimant was not disabled

7   for purposes of SSI (the "2003 Decision").  (AR 543-553).  The Appeals Council granted Claimant's

8   timely request for review, vacated the 2003 Decision, and remanded the case with directions that the

9   testimony of a Vocational Expert ("VE") be obtained to ascertain Claimant's ability to perform

10  specific jobs in light of her nonexertional limitations.  (AR 554-556, 588-589).

11          On March 17, 2005, Claimant and her attorney appeared before ALJ James Berry for a de

12  novo administrative hearing.  (AR 719-739).  Vocational expert Cheryl Chandler appeared and

13  testified at the June 6, 2005, supplemental hearing before ALJ Berry.  (AR 740-747).  On July 19,

14  2005, ALJ Berry issued a written decision in which he found that Claimant was not disabled and,

15  accordingly, not eligible for SSI payments (the "2005 Decision").  (AR 14-30).  On June 22, 2006.

16  the Appeals Council denied Claimant's timely request for review, rendering the ALJ's determination

17  the final decision of the Commissioner.  (AR 679-680, 10-13).  The final decision is appealable to

18  the district court pursuant to 42 U.S.C. § 405(g).  The initiation of an appeal in the district court must

19  be commenced within sixty (60) days of the Appeal Council's decision.  Id.  On August 26, 2006,

20  Claimant timely filed her complaint.  (Doc. 1).

21                              **STATEMENT OF FACTS**

22          The facts have been presented in the administrative hearing transcripts, the ALJ's decisions,

23  and the briefs filed by Claimant and the Commissioner, and, therefore, only testimony from the

24  relevant administrative hearing will be summarized here.[3]

25          At the May 2005 hearing, Claimant testified, through a Spanish interpreter, that she was born

26  on April 10, 1956, making her 49 years old at the time of ALJ Berry's July 10, 2005, decision.  (AR

27

28          [3]  Any additional facts needed to resolve the issues in this action will be addressed as required.

14, 722, 725).  She stated that she has been in the United States for 12 years, speaks and understands a "little bit" of English, and attended school through the seventh grade.  (AR 725).  Claimant further testified that she lives in a house paid for by her retired husband, with whom she lives, and she has 3 children, whose ages range between 9 and 16 years old.  (AR 725).  She added that her husband retired so that he could take care of her.  (AR 729).

When questioned about the ailments that make her feel that she has been disabled since her alleged onset date – July 28, 2000 – Claimant testified that she suffers from arthritis, and  "I think the arthritis broke something in ... my tailbone, and I feel since my bones are shattering I am suffocating because of the asthma."  (AR 726-727).   As to her arthritis, Claimant testified that she takes medication and uses ointments for the pain.  (AR 726-727).  Claimant testified that the medication "takes away about half of the pain . . . [and the]  ointments like Icy Hot don't help either."  (AR 727).  She stated that she has constant pain in all of  her bones, including her right hand, fingers, lower back, nose, and ears.  (AR 726, 733-735).  Claimant added that the medication she takes makes her drowsy and dizzy.  (AR 726, 728).  She acknowledged that she has never tried any other type of treatment for her pain, such as physical therapy, but was prescribed a brace to wear all of the time to alleviate the numbness in her hands.  (AR 728, 735).  With respect to her asthma, Claimant reported that she has to use a nebulizer every 3 hours for 5 or 10 minutes and Albuterol every 4 hours to help her breathe, but she still had painful ribs from trying to breathe.  (AR 728-729).  In response to her attorney's question, Claimant stated that she uses the nebulizer only three times daily.  (AR 736-737).  Claimant also testified that she suffers headaches when she menstruates, for which her doctor told her to takes non-prescription ibuprofen.  (AR 729).

Regarding her activities and exertional capacities, Claimant testified that she can only sit, stand, and walk a "very little."  (AR 726).  In response to the ALJ's question, she responded that she can sit for one-half of an hour, stand for an hour, and walk approximately one block using a four-pronged cane.  (AR 723, 731).  Claimant opined that she could lift and carry ten pounds.  (AR 732).  She added that she spends most of the day lying down both because it eases her pain and her medication makes her drowsy.  (AR 732-733).  As to her activities, she testified that she cuts flowers in her garden in an attempt to distract herself from the pain.  (AR 727).  Claimant further testified

3

1    that she ensures that her daughter-in-law has sufficiently cleaned the house and, when she feels well

2    enough, she performs some household chores.  (AR 730).  She also leaves the house to attend church

3    and look at gardens.  (Id.).  Claimant said that she watches television occasionally.  (Id.).

4         At the June 6, 2005, hearing, ALJ Berry posed two hypothetical questions to VE Cheryl

5    Chandler involving a 49-year old illiterate individual with no past relevant work experience.  (AR

6    743).  In the first hypothetical, the individual retained the residual functional capacity ("RFC") to lift

7    and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours; and

8    occasionally stoop, but who had to avoid concentrated exposure to pulmonary irritants.  (AR 743).

9    The hypothetical individual could perform simple, repetitive tasks; maintain attention, persistence,

10   pace, and concentration; interact with others; adapt to changes in the work setting; and adhere to

11   safety rules.  (AR 743-744).  The VE testified that such an individual could work in food preparation

12   and  dishwashing and that, for each position, there were approximately 10,000 available jobs in

13   California and 100,000 available jobs in the national economy.  (AR 744-745).  The VE further

14   testified that Claimant could be an assembly worker, of which there were 30,000 jobs in California

15   and 300,000 available jobs in the national economy, but further stated that Claimant would be

16   excluded from about 50% of the positions because of the risk of exposure to pulmonary irritants,

17   which would leave 15,000 available jobs in California and 150,000 assembly worker jobs available

18   in the national economy.  (AR 744-745).

19        In the second hypothetical, the individual could lift and carry up to ten pounds occasionally,

20   and items weighing up to ten pounds frequently; stand only one hour; walk one block; sit for thirty

21   minutes; had problems concentrating, maintaining attention, persistence, and pace; and experienced

22   occasional episodes of drowsiness.  VE Chandler testified that such an individual could not perform

23   any job which existed in the national economy.  (AR 745).

24        Claimant's attorney asked VE Chandler whether her responses would differ if the individual

25   had to use a cane.  (AR 746).  VE Chandler responded that she might recommend sedentary rather

26   than light work for such a person, because the need for a cane in, for example, a kitchen could be a

27   risk factor.  (Id.).

28   ///

4

**RELEVANT LEGAL FRAMEWORK**

To qualify as disabled under Title XVI of the Act, an applicant for SSI must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla but less than a preponderance. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotations omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold

1   the decision of the ALJ.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Allen v. Heckler, 749

2   F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the

3   administrative findings, or if there is conflicting evidence that will support a finding of either

4   disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812

5   F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence

6   will be set aside if the proper legal standards were not applied in weighing the evidence and making

7   the decision.  Brawner v. Secretary of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1987).

8                              **SEQUENTIAL EVALUATION PROCESS**

9           The Commissioner has established a five-step sequential evaluation process for determining

10  whether a person is disabled under Title XVI of the Act.  20 C.F.R. § 416.920.  Step one determines

11  if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R.

12  § 416.920(a)(4)(I), (b).  If he is not, the decision maker proceeds to step two, which determines

13  whether the claimant has a medically severe impairment or combination of impairments that meet

14  the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to

15  result in death or continuously lasted or be expected to last at least twelve months.  20 C.F.R.

16  § 416.920a(4)(ii), (c).  If the claimant does not have a severe impairment, a combination of

17  impairments, or meet the duration requirement, the disability claim is denied.  Id.

18          If the impairment is severe, the evaluation proceeds to the third step, which compares the

19  claimant's impairment with a number of listed impairments acknowledged by the Commissioner to

20  be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), (d);  20

21  C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments and

22  satisfies the duration requirement, the claimant is conclusively presumed to be disabled.  20 C.F.R.

23  §§ 416.909, 416.920(a)(4)(iii), (d).  If the impairment is not one conclusively presumed to be

24  disabling, the evaluation proceeds to the fourth step, which determines whether the impairment

25  prevents the claimant from doing work performed in the past.  If the claimant is able to perform his

26  previous work, he is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant

27  cannot perform this work, the fifth and final step in the process determines whether he is able to

28  perform other work in the national economy in view of his age, education and work experience.

1  20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137

2  (1987).

3  The initial burden of proof rests upon a claimant to establish that he "is entitled to the

4  benefits claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations

5  omitted).  In terms of the five step sequential evaluation process, the Ninth Circuit has held that

6  "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that

7  an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of

8  burdens" such that "the ALJ shares the burden at each step."  Tackett v. Apfel, 180 F.3d 1094, 1098

9  & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once a claimant establishes that a

10  physical or mental impairment prevents her from engaging in her previous occupation.  The burden

11  then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful

12  activity and (2) that a "significant number of jobs exist in the national economy" which claimant can

13  perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

14  **ALJ'S FINDINGS**

15  The ALJ found at step one that Claimant has not engaged in any substantial gainful activity

16  since her alleged onset date of June 28, 2000.  (AR 18, 28).  ALJ Berry then addressed in detail

17  myriad inconsistencies in the various diagnostic tests that Claimant underwent over several years and

18  noted that her spinal impairments, if any, and carpal tunnel syndrome were not severe.  (AR 18-21).

19  At step two, the ALJ found that Claimant suffered from asthma and depression, which were severe

20  impairments.  (AR 21, 28).  The ALJ then discussed the record evidence regarding Claimant's

21  asthma and depression and determined that they did not satisfy the criteria of the relevant listings,

22  citing Listings 3.00 (respiratory system) and 12.04 (affective disorders).  (AR 21-22).  At step three,

23  the ALJ found that Claimant's impairments, alone or in combination, did not meet or medically

24  equal those acknowledged by the Commissioner to be so severe as to preclude substantial gainful

25  activity.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments); (AR 22, 28).

26  The ALJ found that Claimant's testimony was not credible given it was inconsistent with the

27  record evidence and was internally inconsistent.  (AR 22-23; 28).  The ALJ also discounted

28  Claimant's treating physician's opinion, noting that it was written on the letterhead of Claimant's

7

attorney, and finding that it appeared to be an accommodation to Claimant because the physician disregarded diagnostic tests that found no underlying pathology that would cause Claimant's alleged symptoms. (AR 24-25). Similarly, ALJ Berry rejected as conclusory and inconsistent with other medical records a "check-the-box" form prepared by neurologist Dr. Perminder Bhatia, to whom Claimant had been referred, in part because the form was prepared for the Fresno County Department of Employment and Temporary Assistance. (AR 25). The ALJ then determined that Claimant retained the RFC to perform a wide range of light work with the following limitations: lifting and carrying 10 pounds frequently and 20 pounds occasionally; standing, walking, or sitting 6 hours in an 8-hour workday; only occasional stooping; and avoiding concentrated exposure to pulmonary irritants. (AR 26, 28). The ALJ further concluded that Claimant's depression did not affect her ability to maintain attention, concentration, persistence, and pace necessary for simple, repetitive tasks, and that she could interact with others, adapt to workplace changes, and adhere to safety rules. (AR 27-29).

At step four, the ALJ found that Claimant had no past relevant work. (AR 27, 29). He noted that, on July 28, 2000, she was 44 years old, she could not read, write, or speak English, and she had a "sixth [sic] grade education." (AR 29). At step five, the ALJ summarized VE Chandler's testimony, the number of available jobs that the VE reported Claimant could perform, and, using Rule 202.16 as a framework, determined that Claimant was not disabled. (AR 29-30). Accordingly, ALJ Berry found that Claimant was not eligible for SSI payments. (AR 30).

## ISSUES

Claimant makes the following claims:

1. The ALJ's findings regarding Claimant's physical impairments and mental limitations are not supported by substantial evidence;

2. The ALJ erred in failing to recuse himself, thereby depriving Claimant of due process;

3. The ALJ misapplied the law to the record evidence because he

    A. did not properly assess Listings 12.04, 12.06, and 3.02, and

    B. failed to accord controlling weight to the opinions of Claimant's treating physicians; and

4.  The ALJ failed to provide specific, convincing reasons for finding Claimant's testimony not credible.

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

### DISCUSSION

### 1.  ALJ's Findings are not Supported by Substantial Evidence

A.  Physical Impairments

Claimant contends that the ALJ ignored and misinterpreted much of the medical evidence. Claimant avers that the pre-onset date tests and medical reports, and subsequent diagnostic tests and reports, support a finding of disability.  (Doc. 18, pp. 6-8).  Claimant argues that, based on the records she references, the ALJ's RFC determination is erroneous, irrational, and demonstrates that he failed to review all of the evidence.  (Id. at 7).  Claimant faults the ALJ for doing the reverse of what she has done in her argument, i.e., Claimant's contentions fail to take in to account all of the evidence, but rely only upon the tests and reports that might support a finding of disability.  (Id. at 6-8).

As addressed above, it is for the ALJ, not the Court, to resolve ambiguities and conflicts in the evidence, including medical evidence.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and quotations omitted); Sprague, 812 F.2d at 1229-1230.  Where there is sufficient evidence to support the ALJ's decision, the Court must uphold that decision provided there is substantial evidence that, when rationally interpreted, supports the decision.  Burch, 400 F.3d at 679; Andrews, 53 F.3d at 1039-1040; Allen, 749 F.2d at 579.  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Orn, 495 F.3d at 630 (citations and quotations omitted). Nevertheless, the decision will be set aside if the ALJ does not apply the proper legal standards. Brawner, 839 F.2d at 433.

In the instant case, the ALJ discussed in detail the differing diagnoses and reports obtained from Claimant's treating physician, Dr. David Cardona, various examining specialists, including neurologists and psychiatrists, and the results of multiple diagnostic tests, including x-rays, MRIs,

9

1    CTs, and electromyography (EMG) nerve conduction studies dating to before Claimant's July 2000

2    onset date. (AR 18-21). As ALJ Berry found, the impressions from the diagnostic tests represent

3    polar opposites, as do many of the physicians' diagnoses. (Id.). For example, as discussed by the

4    ALJ, during the period from March 15, 2000 through September 1, 2004, Claimant underwent

5    several EMG nerve conduction studies and other diagnostic tests of her lumbar spine to determine if

6    her reported pain in her back, hips, and legs were due to a physically observable spine disorder. (AR

7    19; see AR 670-671 (EMG nerve conduction study dated 3/15/00); AR 407 (x-ray on 1/23/01); AR

8    430 (nerve conduction study dated 4/23/01); AR 475 (CT scan on 2/15/02); AR 427 (MRI on

9    5/11/01); AR 540 (CT dated 5/12/03); AR 620 (x-ray on 9/1/04)). During the same period, Claimant

10   was referred for examinations to medical specialists in, inter alia, neurology, psychiatry, and internal

11   medicine. (See, e.g., AR 397-398, 401-405, 410-412; 425-432; 466-467, 476-477, 527-528, 622-

12   623). While the earliest diagnostic tests revealed various abnormalities in Claimant's lumbar spine,

13   the 2002 and 2003 CT scans and the 2004 x-rays indicated no abnormalities in the lumbar spine.

14   (AR 19; see AR 670-671; AR 407; AR 430; AR 475; AR 427; AR 540; AR 620).

15          With respect to the specialists' reports, the ALJ noted that, in March 2000, neurologist

16   Madhav Suri, M.D., opined that Claimant's generalized pain likely was caused by an anxiety or

17   depressive disorder. (AR 18-19; see AR 524). In contrast, in April 2001, neurologist Perminder

18   Bhatia, M.D. concluded that Claimant suffered from left-side radiculopathy at the L5-S1 level and

19   sensory nerve peripheral neuropathy. (AR 20; see AR 430). The ALJ noted that, in 2004,

20   neurologist Mythili Sundaresan, M.D. concluded that Claimant's diagnostic tests indicated C5-C6

21   root compression, for which she exhibited no symptoms, but opined that her complaints of joint pain

22   could be caused by peripheral neuropathy. (AR 20; see 629).

23          Here, after discussing the results of the diagnostic tests and medical reports and the

24   discrepancies between them, the ALJ determined that he could not rely on them to conclude that

25   Claimant suffered a medically determinable spinal impairment. (AR 20). The ALJ summarized the

26   record evidence that supported and negated a finding of disability. (AR 18-20). Because of

27   inconsistencies between the objective diagnostic tests as well as the physicians' varying diagnoses,

28   the ALJ concluded that there was insufficient evidence upon which to base a finding that Claimant

10

1  suffered any severe impairments other than asthma and depression.  (AR 20-22, 28).  The ALJ's

2  review and discussion of the medical records, his conclusion that Claimant's severe impairments

3  consisted of asthma and depression, and his reliance on the records to ascertain her RFC in light of

4  her asthma, and additional nonexertional limitations due to her depression, is appropriate.  (AR 21-

5  27).

6        The ALJ applied the proper legal standards, and there is substantial evidence supporting his

7  resolution of the conflicts in the record evidence.  Accordingly, Claimant's claim contesting the

8  ALJ's findings as to her physical impairments, should be denied.

9        B.  Mental Limitations

10       Claimant next asserts that the ALJ ignored the assessments of the psychiatric consultants and

11 treating mental health therapists as to her nonexertional limitations due to her major depressive

12 disorder ("depression") and post-traumatic stress disorder ("PTSD").  (Doc. 18, p. 8).  Claimant

13 noted that she also was diagnosed as suffering from an avoidant personality disorder, with Global

14 Assessment of Functioning ("GAF") levels in the 50-59.  (Id. at 8-9)  She contends that the ALJ

15 failed to impose the requisite restrictions, without explanation, based on a January 6, 2001,

16 consultative report submitted by psychiatrist Robert Raypon, M.D., who stated that Claimant was not

17 able to concentrate for more than short periods of time, was restricted in her daily living activities,

18 and would find it difficult to interact with others or respond to work situations.  (Id. at 9)  Claimant

19 argues that the ALJ failed to adequately review or develop the mental health record.  (Id.).

20       The law concerning substantial evidence to support the ALJ's mental health findings and

21 general decisions is identical to the law that applies when ascertaining whether there is substantial

22 evidence to support the ALJ's findings with respect to a claimant's physical impairments.  (See sub-

23 section (1)(A) above).  Accordingly, if there is more than a scintilla of evidence demonstrating that

24 Claimant's nonexertional impairments would not preclude her from working, and ALJ Berry applied

25 the proper legal standards, the Court will not overturn the ALJ's decision.  Orn, 495 F.3d at 630;

26 Burch, 400 F.3d at 679; Andrews, 53 F.3d at 1039-1040; Brawner, 839 F.2d at 433; Sprague, 812

27 F.2d at 1229-1230; Allen, 749 F.2d at 579.

28

11

1    As an initial matter, Claimant's contention that the Fresno County Mental Health Center[4]

2    diagnosed her with PTSD and avoidant personality disorder is not confirmed by the record.  (Doc.

3    18, p. 8).  The document that Claimant cites for this assertion states that the two diagnoses should be

4    ruled out, (AR 320), and Claimant is never diagnosed as suffering from these ailments.  (See AR).

5    Further, to the extent that Claimant is diagnosed with major depressive disorder, the diagnosis is

6    reported on an initial assessment as a single episode, which adds that Claimant complains that she

7    has poor concentration, insomnia, and lack of appetite.  (AR 345).

8    Claimant's emphasis on the ALJ's failure to incorporate her GAF lacks merit.  Howard v.

9    Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002); Fisher v. Astrue, 2007 WL

10   4150314, *6 (S.D.Ind. Nov. 14, 2007).  The GAF reflects the "clinician's judgment of the

11   individual's overall level of functioning and includes psychological, social and occupational

12   functioning."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994).

13   Thus, while a GAF score may help the ALJ assess Claimant's ability to work, it is not essential and

14   the ALJ's failure to rely on the GAF does not constitute an improper application of the law.  Howard,

15   276 F.3d at 241; Fisher, 2007 WL 4150314, *6.

16   The ALJ cited several psychiatric consultations dating back to 1999 in finding that, while

17   Claimant suffered from the severe impairment of depression, she was able to perform simple work.

18   (AR 21-22, 26).  He further noted that the January 6, 2001, report of psychiatrist Ramon Q. Raypon,

19   M.D., concluded that Claimant was able to care for herself and her children and was "capable of

20   remembering, understanding and carrying out simple instructions and appropriately relating to and

21   interacting with others."  (AR 26).  The ALJ considered Dr. Raypon's statement that Claimant may

22   have difficulty responding appropriately to usual work situations, and discounted it is as inconsistent

23   with the other consultative reports and Claimant's treatment records.  This is precisely the type of

24   evidentiary conflict an ALJ may resolve.  Richardson, 402 U.S. at 400; Burch, 400 F.3d at 679;

25   Sprague, 812 F.2d at 1229-30; (AR 26-27).  In resolving this issue, the ALJ cites to multiple

26

27      [4]  The official name of this facility is not clear, as the records that include a name identify it either as the "Fresno County Health Services Agency Mental Health Department" or "Fresno County Human Services System Department of

28   Adult Services."  (See, e.g., AR 332, 335).

12

psychiatric records and reports to support a finding that Claimant's depression only limits the type of

work she is capable of performing.  These records and reports provide substantial evidence to

constitute substantial evidence to support the ALJ's decision.  (See e.g. AR 150-153 (examining

psychiatrist Dr. Ravi Mehta report that Claimant is capable of working at a job that requires only one

or two step simple instructions); AR 320-355 (Fresno Mental Health Clinic records with diagnoses

of major depressive disorder, moderate, without mention of limitations or inabilities to care for her

household, etc.)).  Because there is substantial evidence that, when rationally interpreted, supports

the ALJ's decision, Claimant's claim contesting the ALJ's findings as to her mental limitations,

should also be denied.

## 2.  ALJ's Bias

Claimant contends that ALJ Berry should have recused himself from her case because he is

biased, as evidenced in his "dictum."  (Doc. 18, p. 9).  She alleges that, because the Appeals Council

remanded the case to ALJ Berry instead of the ALJ whose decision was being remanded (ALJ

Lyons'), she was deprived of due process.  (Id.).  Claimant references her attorney's questions as to

why the remand was to ALJ Berry, but does not provide accurate citations.  (Id.).  She further asserts

that the "ALJ's diatribe to attack counsel was no more than the norm for him.  He is biased."  (Id.).

A Social Security claimant is entitled to procedural due process in the form of an impartial

decision-maker who decides the case based on the legal rules and evidence adduced at the hearing

and who states the reason for his determination and the evidence upon which he relied.  See

Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011 (1970) (withdrawal of welfare benefits).  ALJs

and other similar quasi-judicial administrative officers are presumed to be unbiased.  Schweiker v.

McClure, 456 U.S. 188, 195-196, 102 S.Ct. 1665 (1982); Verduzco v. Apfel, 188 F.3d 1087, 1089-

1090 (9th Cir. 1999).  Claimant can only rebut this presumption by demonstrating that the ALJ had a

conflict of interest or by showing some other specific reason for disqualification.  Schweiker, 456

U.S. at 195; 20 C.F.R. § 416.1440 (an ALJ "shall not conduct a hearing if he or she is prejudiced or

partial with respect to any party or has any interest in the matter pending for decision.").  The burden

of making such a showing rests with the party asserting bias.  Schweiker, 465 U.S. at 196.

Moreover, unlike federal judicial officers, ALJs are not held to the standard of avoiding the

13

1   appearance of impropriety.  Bunnell v. Barnhart, 336 F.3d 1112, 1114-1115 (9th Cir. 2003) (holding

2   that plaintiff's counsel's having sued the ALJ in the past did not demonstrate actual bias when a

3   motion to recuse had been denied).  Thus, the Claimant must show actual bias on the part of the ALJ.

4   Id.

5          As an initial matter, Claimant fails to explain what she meant when she referred to ALJ

6   Berry's "dictum" or "diatribe," and how they evidenced ALJ Berry's bias in this matter.  (See Doc.

7   18, p. 9).  In addition, there are two letters in the administrative record from Claimant's attorney to

8   ALJ Berry, dated March 2 and March 7, 2005, which assert bias, primarily due to unidentified,

9   multiple decisions in which the ALJ determined that the attorney's clients were not disabled.  (AR

10  601, 602).  Specifically, in the March 2 letter, counsel requests that ALJ Berry recuse himself

11  primarily due to his bias against counsel and his law firm.  (AR 601).  In his March 7 letter, counsel

12  first questions why ALJ Berry was assigned to the remanded case, then asserts that the ALJ's actions

13  evidence that he and his clients cannot obtain a fair hearing before ALJ Berry because of previous

14  challenges by counsel.  (AR 602).  The hearings over which ALJ Berry presided and his July 12,

15  2005, decision do not reveal any animosity or bias toward Claimant or her attorney.  (See generally

16  AR 17-30; 719-739; 740-747).  Claimant has provided no evidence or factually supported argument

17  of actual bias on the part of ALJ Berry, and therefore has failed to meet her burden of rebutting the

18  presumption that the ALJ was not biased or able to render a fair decision.  Schweiker, 465 U.S. at

19  196; Goldberg, 397 U.S. at 271; 20 C.F.R. § 416.1440.  Accordingly, Petitioner's second claim must

20  be denied.

21  **3. Misapplication of the Law**

22          A.  Improper Evaluation of the Listings

23          Claimant next argues that the ALJ did not adequately consider Listings 12.04, 12.06, and

24  3.02.  (Doc. 18, p. 9).  She further contends that she cannot obtain due process unless, on remand, the

25  ALJ obtains the testimony of a medical expert to ensure that Step Three of the sequential procedure

26  is evaluated properly.  (Id. at 9-10).

27          In the first instance, Claimant provides no legal or factual support for this argument, as

28  required by the Court's August 29, 2006 Scheduling Order.  (See Docs. 7, ¶ 11; 18, p. 9).

1   Nevertheless, the argument will be addressed as construed above.  When a claimant asserts upon

2   review that the ALJ improperly considered whether his impairments met or equaled a listing, he

3   must establish that his impairments satisfy the requirements set forth in the listing.  Bowen v.

4   Yuckert, 482 U.S. 137, 146 n. 5, 107 S. Ct. 2287 (1987); Young v. Sullivan, 911 F.2d 180, 183 (9th

5   Cir. 1990); 20 C.F.R. § 416.925(d).  Moreover, when the ALJ finds that the claimant's impairments

6   do not meet or equal a listing, he is not required to state specifically what evidence supports his

7   conclusion; rather, it is sufficient for the ALJ to summarize the pertinent records and make specific

8   findings that will provide a reviewing court with sufficient detail to determine whether the ALJ's

9   decision is appropriate.  In other words, the ALJ is not required to state why the claimant failed to

10   satisfy every listing.  Gonzalez v. Sullivan, 914 F.2d 1197, 1200-1201 (9th Cir. 1990).  Further, the

11   ALJ  generally is not obligated to have a medical expert testify at the administrative hearing unless

12   the onset date cannot be ascertained or the expert is required to help develop the record with respect

13   to a claimant's mental impairments.  Quarles v. Barnhart, 178 F.Supp.2d 1089, 1095-96 & n. 8

14   (N.D.Cal. 2001).  Even where a medical expert testifies, the ALJ is not obligated to accept or defer to

15   the testimony because it is not factual, but, instead, reflects the expert's advise or opinion.  Collins v.

16   Richardson, 356 F.Supp. 1370, 1372 (D.C.Tenn. 1972).

17         Here, Claimant provided no evidence, and provides no explanation as to how her

18   impairments reach the level of Listings 3.02, 12.04, or 12.06, or what error the ALJ made when he

19   concluded that her diagnosed asthma and depression did not meet the criteria of Listings 3.03[5] and

20   12.04, respectively.  Bowen, 482 U.S. at 146 n.5; Young, 911 F.2d at 183; 20 C.F.R. § 416.925(d);

21   (Doc. 18, p. 9-10).  The ALJ used the relevant evidence and applicable law when he determined that

22   Claimant's asthma and depression did not meet or equal the listings for asthma or depression.  (AR

23   21-22).  Given that there are scant references to Claimant's anxiety, and no diagnosis that she suffers

24   from an anxiety disorder, the ALJ was not obligated to consider whether she satisfied Listing 12.06

25

26

27

28   _____

     [5]  Listing 3.03 is the applicable listing for asthma.  20 C.F.R. Part 404, Subpt P, App. 1, § 3.03.  With few
     exceptions not relevant here, Listing 3.03 refers the reader to the criteria set forth in Listing 3.02.

1   (anxiety related disorders).[6]  See Gonzalez, 914 F.2d at 1200-01 (ALJ not required to explain why

2   claimant did not meet every listing).

3       B.  Opinions of Treating Physicians

4       Claimant asserts that the ALJ failed to accord the treating physicians' opinions the "special

5   weight" to which they are entitled without providing specific and legitimate reasons for doing so.

6   (Doc. 19, p. 11).  She adds that the specific and legitimate reasons must be supported by substantial

7   evidence and must, themselves, be clear and convincing.  (Id.).

8       The opinions of treating physicians should be given more weight than the opinions of

9   physicians who do not treat the claimant.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);

10  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating physician's opinion is not

11  contradicted by another physician, it may be rejected only for "clear and convincing" reasons

12  supported by substantial evidence in the record.  Id. at 830.  Even if the treating physician's opinion

13  is contradicted by another physician, the ALJ may not reject this opinion without providing "specific

14  and legitimate reasons" supported by substantial evidence in the record.  Id. (quoting Murray v.

15  Heckler, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by the ALJ setting out a detailed and

16  thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

17  and making findings.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do

18  more than offer his conclusions.  He must set forth his own interpretations and explain why they,

19  rather than the doctor's, are correct.  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).

20      The ALJ may disregard a physician's opinion that is "brief and conclusionary in form with

21  little in the way of clinical findings to support [its] conclusion."  Young v. Heckler, 803 F.2d 963,

22  968 (9th Cir. 1986) (brackets added).  An ALJ may also discredit the opinion of a treating physician

23  if it is unsupported by objective evidence or the record as a whole.  Tonapetyan v. Halter, 242 F.3d

24  1144, 1149 (9th Cir. 2001).  Similarly, a "check-the-box" form that does not explain the basis for its

25  conclusions is entitled to little weight.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).  In

26  contrast, vague, broad, or generalized reasons are insufficient grounds for the ALJ to reject a treating

27

28      [6]  The question of whether the ALJ should have a medical expert testimony at the remanded hearing is not
    addressed here because it is moot.

16

1   physician's opinion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

2       Regardless of the weight given to a treating physician's medical opinion, it is not binding on

3   the ALJ with respect to the ultimate determination of disability.  See Batson v. Comm'r of Soc. Sec.

4   Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004) (treating physician had opined that claimant "met or

5   equaled the criteria" for a listed impairment under 20 C.F.R. § 404, Subpt. P, App. 1, § 105C);

6   Magallanes, 881 F. 2d at 751 ("treating physician's opinion is not, however, necessarily conclusive

7   as to either a physical condition or the ultimate issue of disability"); 20 C.F.R. § 416.927(e)(1).

8       In the instant case, two of Claimant's treating physicians – Dr. David Cardona, a family

9   practitioner, and Dr. Perminder Bhatia, a neurologist – submitted opinions.  (AR 423-24, 676-77).

10  Both physicians completed a check-the-box form on Claimant's behalf to enable Fresno County and

11  the State of California, respectively, to evaluate her for public assistance and/or job placement.  (AR

12  423-444, 677).  Dr. Cardona's August 31, 2004, form stated that Claimant developed a chronic

13  medical condition in December 2001, for which she actively has been seeking treatment, and which

14  limits her from performing "certain tasks."  (AR 677).  Dr. Cardona checked boxes indicating that

15  Claimant could not work at all and has unidentified limitations that preclude her from working or

16  participating in education and training.  (Id.).  He specified that Claimant did not require assistance

17  to care for herself or her children.  (Id.).

18      Dr. Cardona provided a second "opinion," consisting of a letter dated March 2, 2005 on

19  Claimant's attorney's letterhead that he signed on March 15, 2005.  (AR 676).  Dr. Cardona's letter

20  states that Claimant's condition has not changed since he prepared his August 2004 form opinion

21  and that Claimant remains disabled.  (Id.).  Dr. Cardona cites diagnostic tests that found Claimant

22  had, inter alia, a cervical lesion, lumbar osteoporosis, COPD (chronic obstructive pulmonary

23  disease), carpal tunnel syndrome, and arthritis that prevent her from maintaining the same position

24  for more than thirty minutes.  (Id.).

25      Dr. Bhatia, one of the neurologists to whom Claimant was referred, saw Claimant in 2001.

26  (See AR 421-432 (records from 2/21/01-5/18/01); AR 526-527 (7/24/01 consult); AR 528 (10/29/01

27  letter referring Claimant back to Dr. Cardona)).  Dr. Bhatia's records contain the results of several

28  tests and reflect that he saw Claimant on three occasions for consultations and follow-ups before

17

1   referring her back to Dr. Cardona for treatment or referral to an orthopedist.  (AR 425-426, 431-432;

2   526-528).  Dr. Bhatia's opinion is in a check-the-box form that was completed for the Fresno County

3   Department of Employment and Temporary Assistance, and is similar, but not identical to

4   Dr. Cardona's form.  (Compare AR 423-424 with AR 677).  In his May 30, 2001 form, Dr. Bhatia

5   stated that, since May 18, 2001, Claimant was incapacitated temporarily from work due to her

6   lumbar disc disease with radiculopathy.  (AR 423-424).  Dr. Bhatia added that Claimant presently

7   could not perform manual or sedentary labor or participate in training or adult education.  (AR 423).

8   Dr. Bhatia also reported that he planned to treat Claimant with pain medications and opined that he

9   would release her from his care on July 30, 2001.  (AR 423-424).  Finally, Dr. Bhatia indicated that

10   Claimant could care for herself and her children.  (AR 424).

11       ALJ Berry considered and discounted the opinions of Drs. Cardona and Bhatia.  (AR 24-25).

12   In doing so, the ALJ correctly noted that Claimant's treating physicians could not determine the

13   ultimate question of whether Claimant was disabled.  20 C.F.R. § 416.927(e)(1); (AR 24-25; see AR

14   423, 677).  As to Dr. Cardona's March 15, 2005, opinion, the ALJ noted that Dr. Cardona selectively

15   chose from the conflicting diagnostic tests only those that would support a finding of disability.  (AR

16   24-25).  ALJ Berry pointed out that Dr. Cardona relied on an x-ray to state that Claimant suffered

17   from osteoporosis, but ignored more sophisticated, subsequent diagnostic tests that did not find

18   evidence supporting that diagnosis.  (AR 24).  The ALJ also addressed the fact that Dr. Cardona

19   relied on a consultant's report concluding that Claimant had a spinal lesion and right-sided carpal

20   tunnel syndrome, but ignored the consultant's conclusion that Claimant was asymptomatic.  (Id.; see

21   629, 633).  ALJ Berry discussed in detail the objective data that did not support Dr. Cardona's

22   opinion, and the inconsistencies in the record, and concluded that Dr. Cardona's opinion was merely

23   an accommodation to Claimant.  (AR 24-25).  As to Dr. Bhatia's check-the-box form, the ALJ

24   considered and discounted it as conclusory and vague.  (AR 25).  The ALJ further noted that

25   Dr. Bhatia failed to itemize Claimant's physical limitations.  (Id.).  Finally, the ALJ determined that

26

27

28

1   Dr. Bhatia's opinion was not supported by the record as a whole because his diagnosis[7] was based on

2   impressions from a 2001 EMG nerve conduction study and lumbar spine MRI that subsequent

3   diagnostic tests and examinations were not able to replicate.  (Id.).  Accordingly, ALJ Berry

4   concluded that there was no reason to accord much weight to Dr. Bhatia's opinion.  (Id.).

5           In addressing the inconsistencies between the treating physicians' opinions and the record as

6   a whole, the ALJ set forth specific and legitimate reasons for rejecting the opinions.  The Court is

7   mindful of the recent decision in Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), where the Ninth

8   Circuit reiterated the deference that should be given to a treating physician.  However, where the

9   treating physicians' opinions are not supported by the medical records in the first instance, as here,

10  Orn is not instructive.  See also Batson v. Commissioner of Social Sec., 359 F.3d 1190, 1197 (9th

11  Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate

12  conclusion).  In addition, the ALJ did not err in discounting the form statements completed by Drs.

13  Cardona and Bhatia reporting Claimant was "incapacitated" or "disabled," because that

14  determination was not theirs to make under the Social Security Act.  20 C.F.R. § 416.927(e)(1).

15   Accordingly, Claimant's third claim should be denied.

16  **4. Claimant's Credibility**

17          Lastly, Claimant contends that the ALJ failed to provide specific, convincing reasons for

18  discounting her subjective testimony.  (Doc. 18, p. 10).  She asserts that the ALJ erred in concluding

19  that the lack of record evidence supporting her testimony cast doubt on her veracity, and that he was

20  obligated to contact the treating source to clarify the matter when the records were used against her.

21  (Id.).  Claimant argues that the ALJ did not provide adequate, fair reasons to explain why he found

22  her testimony not credible.  (Id. at 10-11).

23          A two step analysis applies at the administrative level when considering a claimant's

24  subjective credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant

25  must produce objective medical evidence of an impairment and show that the impairment could

26  reasonably be expected to produce some degree of symptom.  Id. at 1281-1282.  Pursuant to Social

27

28          [7]  On May 18, 2001, Dr. Bhatia diagnosed Claimant as suffering from lumbar disc disease with radiculopathy, which is the diagnosis he included on his check-the-box opinion.  (AR 423, 426).

1   Security Ruling ("SSR") 96-7p, however, the ALJ may not disregard the claimant's pain testimony

2   only because there is a lack of medical records evidencing an impairment that causes pain.  SSR 96-

3   7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  Nonetheless, if there is no

4   evidence that the claimant is malingering, the ALJ can reject the claimant's testimony about the

5   severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing

6   so."  Smolen, 80 F.3d at 1281.  This level of specificity is crucial because, in its absence, effective

7   judicial review may not be possible.  See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal.

8   2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible

9   renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by

10  substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to

11  the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

12  statements and reasons for that weight").

13        The Ninth Circuit instructs that, when a claimant testifies about disabling pain, but does not

14  seek treatment for it or fails to comply with prescribed treatment, the ALJ may find that the

15  claimant's pain testimony is "unjustified or exaggerated."  Orn v. Astrue, 495 F.3d at 638.  This

16  Court further notes that there are any number of clear and specific findings that the ALJ can make,

17  many of which are identified in SSR 96-7p.  Such findings include: (1) whether "the level or

18  frequency of treatment is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment

19  History), (2) whether "the medical reports or records show that the individual is not following the

20  treatment as prescribed and there are no good reasons for this failure," id., (3) the consistency of

21  statements made by the claimant to physicians, to those deciding benefits under other programs (e.g.,

22  workers' compensation), and to the Social Security Administration itself, while recognizing that

23  "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or

24  improve with time, and [that] this may explain why the individual does not always allege the same

25  intensity, persistence, or functional effects of his or her symptoms."  Id.  Each of these and other

26  potential findings are fact-specific and precisely within the province of the ALJ.  Some other ALJ

27  findings, as identified in reported cases, are illustrative and demonstrate the many ways in which

28  ALJs can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's

20

testimony that her neck pain was so severe that she had to cut her long hair for relief was

contradicted by the fact that her hair reached well below her shoulders at the administrative hearing,

Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), (2) the same ALJ found that claimant's

testimony that she had never undergone physical therapy was contradicted by medical records

indicating that she had, in fact, attempted such treatments, id., (3) an ALJ found that claimant's

"'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility

regarding her assertion that her disability precluded work,  Thomas v. Barnhart, 278 F.3d 947, 959

(9th Cir. 2002), (4) the same ALJ found that claimant had not been a reliable historian, "'presenting

conflicting information about her drug and alcohol usage,'" id., (5) the same ALJ also found that

claimant's efforts to impede accurate testing of her limitations argued strongly against her credibility,

id., (6) an ALJ found that claimant had been uncooperative during consultative examinations, and

illustrated that finding with a specific statement by a physician regarding claimant's "'poor effort,'"

Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001), (7) the same ALJ found that claimant

tended to exaggerate, and illustrated that finding with a specific comment by a physician that

claimant was deficient during cognitive testing but "'much better'" when giving reasons for her

inability to work, id., (8) an ALJ found that claimant's pain assertions were inconsistent with the

opinion of his own treating physician, who was "'quite emphatic in his report about the lack of

objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50

F.3d 748, 750 (9th Cir. 1995), (9) an ALJ found that claimant's limited and recent use of non-

narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F.

Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998) and (10) the same ALJ found that claimant's

conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049.

Light contains a brief synopsis of  factors that can form a basis for ALJ credibility findings.  See

Light, 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness,

inconsistencies either in his testimony or between his testimony and his conduct, his daily activities,

his work record, and testimony from physicians and third parties concerning the nature, severity, and

effect of the symptoms of which he complains").

///

1    Here, as discussed above, Claimant testified that she has constant pain in all of her bones,

2 including her right hand, fingers, lower back, nose, and ears. (AR 726, 733-735). She testified that

3 "I think the arthritis broke something in ... my tailbone, and I feel since my bones are shattering I am

4 suffocating because of the asthma." (AR 726-727). Claimant testified that the medications she takes

5 relieves about half the pain, and the ointments she uses provides no relief. (Id.). Claimant testified

6 that she has never tried physical therapy, but was prescribed a brace to wear all of the time to

7 alleviate numbness in her hands. (AR 728).

8    In finding that Claimant's testimony lacked credibility, the ALJ noted inconsistencies

9 between her testimony and the medical records, and also found that her testimony was internally

10 inconsistent. (AR 22-23). With respect to the internal inconsistencies, the ALJ noted that Claimant

11 testified both that she used a nebulizer every three hours and that she used the machine three times a

12 day. (AR 23; see AR 728-729, 737). As to the inconsistencies between Claimant's testimony and

13 the record evidence, the ALJ questioned whether and why she used a wrist brace for carpal tunnel

14 syndrome when the examining consultant found that she had, at most, early right carpal tunnel

15 syndrome, there was no record that any doctor prescribed or directed her to buy or wear a brace, and

16 none of the consultants noted that she was wearing a brace. (AR 23; see AR 629-33 (early right

17 carpal tunnel syndrome) ). Similarly, the ALJ questioned how often Claimant used a four-pronged

18 cane, which, again, no doctor reported her using when she arrived for a consultation.[8] (AR 23).

19 Moreover, although ALJ Berry acknowledges that Claimant has asthma, he notes that the record

20 evidence, including pulmonary function test results, indicate that it is well-controlled and she suffers

21 minimal, if any, symptoms. (AR 22; see AR 396-398, 466-469, 478-480).

22    Throughout his decision, the ALJ discusses the lack of conclusive evidence of any organic

23 impairment that would result in the pain that Claimant alleged she suffered. (See generally AR 17-

24 28; 475; 478-480; 510, 527-528, 531, 533, 540, 619-621, 670-673). Although Claimant consistently

25 complained that she suffered pain and/or weakness in her bones, joints, hips, legs, and head, the

26 _____

27    [8] ALJ Berry erroneously stated that Claimant's doctor had not given her a cane. (AR 23). Amidst the virtually
illegible records provided by the Commissioner is an August 29, 2001 progress report evidencing that Dr. Cardona's
28 medical group provide her with a cane. (See AR 495).

1  extensive objective evidence negating any underlying reason for the pain, together with the lack of

2  aggressive treatment,[9] such as the use of a TENS unit or referral to a pain management clinic or

3  physical therapist, provides more than adequate reason to conclude that Claimant's pain was not as

4  severe as she claimed.  (AR 423-426, 478-480, 727-735).  Because Claimant was not prescribed

5  treatment consistent with the severity of her alleged pain, and there are insufficient records to support

6  a finding that she suffered such pain, there are adequate reasons discussed by the ALJ in his decision

7  to discount  Claimant's pain testimony.  SSR 96-7p (Medical Treatment History).

8          It is apparent from the foregoing that ALJ Berry found Claimant's testimony unjustified and

9  exaggerated and discounted it as not credible based on acceptable and adequate factors.

10  Accordingly, the Court finds that the ALJ's evaluation of Claimant's credibility is sufficiently

11  specific to allow review, and does not warrant either a decision for Claimant or a remand for further

12  proceedings as to Claimant's credibility.

13                    **CONCLUSION AND RECOMMENDATIONS**

14          For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the

15  ALJ properly concluded that Claimant is not disabled.  This Court finds that the ALJ's decision is

16  supported by substantial evidence in the record as a whole and based on proper legal standards.

17  Accordingly, this Court RECOMMENDS that:

18          1.  Claimant Ana Orellana's Social Security complaint BE DENIED, and

19          2.  Judgment BE ENTERED for Defendant Michael J. Astrue and against Plaintiff Ana

20  Orellana, and

21          3.  The Clerk of the Court be DIRECTED to close this case.

22          These Findings and Recommendations are submitted to the United States District Judge

23  assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No

24  later than fifteen (15) days after service of these Findings and Recommendations, any party may file

25  written objections to these Findings and Recommendations with the Court and serve a copy on all

26  parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-

27

28          [9]  The most aggressive treatment Claimant receives consists of occasional steroid injections in her back and/or hip.  (AR 486-509, 634, 637).

304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed and served no later than ten (10) days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).  The District Judge will review the Magistrate Judge's Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **February 12, 2008**                                           **/s/ Theresa A. Goldner**
                                                                                       UNITED STATES MAGISTRATE JUDGE

24